## Moore & Paine v. Tarlton and Paine.

1. A party indebted to others, in the sum of sixteen hundred dollars, or there-abouts, executed an absolute conveyance of real estate, in which the consideration expressed was eight thousand five hundred dollars; afterwards, the proerty was sold under execution and purchased by the judgment creditor. The grantees in the deed, filed their bill against the grantor and the purchaser, stating that although unconditional in its terms, it was intended as a mere security for what was due, and praying that they might have the benefit of it as such. It was admitted that the deed would not authorise a recovery at law, but would be there considered as fraudulent. *Held*, that being void for fraud in fact, it was void *in toto*, and could not be enforced to any extent in Equity.

THE plaintiffs in error, filed their bill in the Court of Chancery, sitting at Mobile, in which they state, that on the 8th of April, 1837, together with James Paine, their deceased partner, they drew a bill on Wm. S. Paine & Co. for the sum of twelve hundred and seventeen dollars and sixty cents, payable thirty days after date, in favor of J. & R. Geddes; that the bill was accepted by the drawees and passed to the Messrs. Geddes in payment of a debt due them by the acceptors. That the defendant was on the day aforesaid indebted to the plaintiffs and their deceased partner in the sum of two hundred and four dollars and sixty-one cents, for goods sold and delivered, and to the plaintiff, Moore, in the sum of one hundred and sixty-seven dollars.

The bill then alleges, that the plaintiffs have been compelled to pay the bill drawn by them, to J. & R. Geddes, although it was accepted by William S. Paine & Co. and drawn for their exclusive benefit, and the money thus paid, together with the several sums owing as aforesaid, are now due and unpaid. And further, on the first day of May, 1837, the defendant, Paine, one of the firm of Wm. S. Paine & Co. with the view of indemnifying the plaintiff against all loss or damage on account of the bill of exchange, and to secure the payment of the several other sums due as aforesaid, did execute and deliver to the plaintiff, Moore, a deed of conveyance for a certain lot of land lying, being and situate in the city of Mobile, (a particular description of which is set out.) This deed accompanies the bill

as an exhibit, from which it appears that the deed is made professedly upon a consideration of eight thousand five hundred dollars, paid to the grantor by the grantee ; it is absolute and unconditional in its terms, and appears to have been duly proved and recorded.

It is further stated, that the only consideration on which the deed is founded is the indebtedness of William S. Paine & Co. and of William S. Paine individually, to the plaintiffs as aforesaid, and that the plaintiff, Moore, accepted it as a security for the repayment of these several sums, without paying any thing further therefor.

The plaintiffs also state, that in May, 1838, John Tarlton and S. V. V. Schuyler, respectively, recovered judgments in the Circuit Court of Mobile, against Wm. S. Paine & Co. each of which judgments is for the sum of twenty-seven hundred and twenty-nine dollars and forty-four cents; on each of these judgments executions were issued and placed in the hands of the sheriff of Mobile county, in August, 1838, who levied the same on the lot conveyed to the plaintiff Moore, as aforesaid, and in virtue thereof, sold and conveyed it to the defendant, Tarlton, for the sum of twenty-five dollars; that Tarlton is in possession of the lot, and refuses to pay to the plaintiffs the amount of their several demands, or to sell it and pay them from the proceeds, although often requested so to do.

The bill prays process of subpœna to the defendants: that Tarlton may pay the plaintiffs their demands, or that the lot may be sold and they paid from the procreds; and for general relief. Subpœna's issued, and were executed on the defendants; Tarlton answered, and the bill was taken as confessed as to Paine, for the failure to answer.

The cause was heard on depositions and documentary evidence adduced by the parties. The Chancellor dismissed the bill at the costs of the plaintiffs; and to revise that decree, the plaintiffs have prosecuted a writ of error to this Court.

LESESNE, for the plaintiffs—contended, that there was no evidence of fraud on the part of Moore, in accepting the deed, and even if the motives of Wm. S. Paine, were not the most correct, the security cannot be defeated.

As to the inadequacy of the consideration of the deed to Moore, that can only affect the right of the grantee to hold all the property conveyed; his lien is good to the extent of his debt. A deed, fraudulent in law, cannot be made the ground of legal title: it will be regarded in the law forums, as either good or bad, but it is otherwise in equity; there, it will be considered as a security for so much as was paid for it, and void so far as it appears to have been voluntary. Wm. S. Paine was only performing a moral duty in securing the debt of the plaintiffs, and however fraudulent his intentions may have been as it respects others, the plaintiffs right to the security he gave them, is unquestionable as against him; and the defendant Tarlton, having acquired only such title as he had, does not occupy a situation more favorable: Boyd v. Dunlap, 1 Johns. Ch. Rep. 478; Sands v. Codwise, 4 Johns. Ch. Rep. 536: See 2 Sch. & Lef. Rep. 492; 8 Ves. Rep. 283; 2 ib. 516; 1 Vern. Rep. 465; Atherly on Mar. Sett. 173; Brown's C. & A. Law Ch. 1 Sec. 3, page 87, *et seq.*

No counsel appeared for the defendants.

COLLIER, C. J.—By the second section of the act " to prevent frauds and perjuries" it is enacted that every gift, grant, or conveyance of lands, tenements, &c. made and contrived of malice, fraud, covin, collusion or guile, to the intent, or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, &c. shall be henceforth taken as against the person or persous, &c. whose debts, suits, &c. by such guileful and covinous devices and practices as is aforesaid, shall or might be any wise disturbed, hindered delayed, or defrauded, to be clearly and utterly void. Aik. Dig. 207. This enactment is substantially a transcript of the statutes of the 13th and 27th Eliz. so far as the rights of creditors and purchasers are concerned, and like the former, avoids *in toto*, all conveyances made to defraud creditors, without reimbursing the fraudulent grantee to the prejudice of the creditor, the consideration he may have paid.

In Sands, *et al.* v. Codwise, *et al.* 4 Johns. Ch. Rep. 436, it was held that conveyances made to defeat creditors are void, not only by statute, but by the common law; and if void, on the ground of a positive fraud they are void, *ab initio.* And

Moore & Paine *v.* Tarlton and Paine.

in Wadworth v. Marsh, 9, Conn. Rep. 481, it was said that the validity of a conveyance does not depend entirely upon the consideration received, but upon the intent of the parties. Where the intent appears to have been to defraud, the conveyance is not merely voidable, but utterly void, as against the creditors of the grantor. Hence, it is frequently declared that it is not sufficient that a conveyance be upon valuable consideration, or *bona fide.* It must be both, and therefore if a conveyance be defective in either particular, though operative between the parties and their representatives, it is utterly void as to creditors. 1 Story's Eq. 346, 363; Twine's case, 3 Co. Rep. 81.

In the case before us, the plaintiffs do not explicitly admit that the deed from Wm. S. Paine is fraudulent within the meaning of the statute, but their application to equity for relief proceeds upon the idea, that their deed cannot be sustained at law, because it is absolute in its terms, while it is intended merely to stand as a security for a debt not greater in amount than one-fifth of the consideration expressed on its face. In this view of the case, is it competent for chancery to subject the property conveyed to the payment of the plaintiffs demand, against one who occupies the position of both creditor and purchaser? It is not pretended that there was a mistake in the drawing of the deed, or that it is in any manner different in its terms from the intention of the parties, but it is impliedly conceded that upon a trial at law, the plaintiffs could not recover. The transaction itself, showing the absence of that *bona fides,* which is essential to the validity of conveyances, intended to operate against creditors.

No case has ever come under our notice, in which relief has been afforded to a grantee under similar circumstances. Equity, instead of being more tolerant in cases of bad faith, will look with a more searching eye, and will act upon all badges of fraud and presumptions of ill faith which are recognised at law, and even goes farther in denouncing fraud. Mr. Justice Story says "it is by no means to be deemed a logical conclusion, that because a transaction could not be reached at law as fraudulent, therefore it would be equally safe against the scrutiny of a Court of Equity; for a Court of Equity recognises a scrupulous good faith in transactions, which the law might not repudiate. It acts upon conscience, and does not content itself

with the narrow views of legal remedial justice," 1 vol. of Eq. 366. Without extending this course of remark further, we think it may be safely assumed that a Court of Chancery will not lend its aid to a grantee, so as to give him the benefit of a deed, which a Court of Law would consider fraudulent *in fact.*

The case of Boyd & Suydam v. Dunlap, *et al,* 1 Johns. Ch. Rep. 478, is entirely unlike the present. In that case, a bill was filed by the creditors, to set aside a conveyance of real and personal property, upon the allegation that it was voluntary and without consideration, and made fraudulently to defeat the creditors of the grantor. The conveyance was made from a father to a son, to whom the father was indebted in a sum equal to about two-thirds of the value of the property conveyed ; it also appeared, that the father told the son, on his coming of age, about five years before the conveyance was made, that he should have the whole of his property if he would stay with him and take care of his parents in their old age. The Chancellor said he did not discover such traces of actual and direct fraud as warranted him in directing the conveyance of the real estate to be delivered up and cancelled, as absolutely null and void. " There is a marked difference between an interference actively to compel a party to re-convey or surrender a deed, and a refusal to aid a party who seeks a specific performance of a contract. If actual fraud be not clearly and satisfactorily made out, the Court may refuse its aid, but will not take so decisive a step as setting aside, *in toto,* the assumed title, but will make it subservient to the equity of the case, or leave the party complaining, to his remedy at law against a contract founded on inadequacy of price, or other suspicious circumstances." Again: "A deed, fraudulent in fact, is absolutely void, and is not permitted to stand as a security for any purpose of re-imbursement or indemnity; but it is otherwise, with a deed obtained under suspicious or inequitable circumstances, or which is only constructively fraudulent." Here was a proceeding by creditors, to set aside a deed upon the allegation of fraud, but in the case at bar, the bill is filed by the grantee against creditors to set up and sustain a deed to the extent of the grantee's demand, upon the implied admission, that it would be regarded at law, as fraudulent, and defeated *in toto.* While the case cited rests upon familiar principles of equity, the case we are considering

has no warrant, either in principle or authority, so far as our researches extend.

But it is insisted that the plaintiffs should be relieved in chancery, because a court of law, would regard the deed as either good for the whole, or entirely void, and that if they failed in an action to recover possession, they would loose the entire benefit of their security. This argument has already been answered. If the deed is fraudulent in fact, no Court can aid them; if it is founded upon a valuable consideration and *bona fide*, it would be evidence in an ejectment or trespass, to try titles, and until its validity has been affirmed by the verdict of a jury, the plaintiffs cannot recover on it in equity; for it is a well settled principle in that Court, that a party who seeks the specific performance of a contract, must present a case free from suspicion or unfairness. This principle will apply with all force, where a deed is sought to be made effectual against creditors, by suit in chancery.

We have not thought it necessary to notice the answer and proofs, as the cause in our opinion might have been dismissed for want of equity in the bill ; and without adding any thing further, we have only to say, that the decree must be affirmed.