# REPORTS

OF

# CASES ARGUED AND DETERMINED,

## January Term, 1845.

~~~~~~~~~~~~~~~~~

## DUBOSE v. DUBOSE.

1. No inference of fraud arises upon a deed of trust, conveying property for a debt-or as an indemnity to his sureties, from the circumstance that the property is to remain in the trustee's possession, until he may choose to sell or be required to do so by the beneficiaries of the deed.

2. Any execution creditor, independent of the statute right of payment, may compel creditors secured by mortgage or deed of trust, to close the trust by sale, and distribute the surplus if any will be the probable result of a sale; and, without such probability, upon indemnifying the other party against the costs of suit and sale.

3. A discretion given to a trustee, who is also the surety of the grantor, and for whose indemnity a trust is created, to pay first either of two debts, for both of which he is liable as surety, warrants no inference of a fraudulent intention.

4. A direction in a deed of trust, which does not appear to have been made by an insolvent debtor, or one in failing circumstances, that the land conveyed by him shall, until its sale under the trust, be cultivated by the slaves conveyed and such others as the trustee may procure, does not make the deed fraudulent as against a creditor subsequently suing out execution.

Writ of error to the Circuit Court of Marengo County.

DETINUE by James H. Dubose against Joel Dubose for certain slaves.

At the trial, it was shown in evidence that the defendant, as sheriff of Marengo county, on the 8th of November, 1842, seized the slaves in controversy, as the property of Isaiah Dubose, by virtue of a *fieri facias* against him at the suit of one Maywood, issued the same day. The slaves, at the time of levy, were in possession of the defendant in execution, and had been so, as his property, for many years.

The plaintiff introduced as evidence, a deed made on the 14th of October, 1842, by the said Isaiah Dubose to him James H. Dubose, in trust for himself—who resided in Marengo county—and for Cyrus Bacot, Wm. Wingate, Wm. E. Dargan, and Hopkins G. Charles, of South Carolina—all these persons were sureties for the said Isaiah. Also, in trust for Martin Waller and Alfred L. Barton, of South Carolina, creditors of the said Isaiah. These several parties appear from the deed, to be liable for, or creditors of the said Isaiah, as follows:

1. Isaiah as principal, and James H. and one K. C. Dubose as sureties, owed the Branch Bank of Alabama at Mobile, $3,000.

2. Three judgments, all rendered in a court of South Carolina in favor of Clement D. Wallace, as guardian, &c., one of them against Isaiah Dubose, principal, and Cyrus Bacot, Hopkins G. Charles and William E. Dargan, sureties, on a bond made by them and said James H., also a surety, $14,020 16.

Another against Isaiah, as principal, and K. C. Dubose, Hopkins G. Charles and William E. Dargan, on a bond made by them and said James H., also a surety, $14,549 25.

The other against Isaiah, the principal, and K. C. Dubose, Wm. Wingate, Hopkins G. Charles, and Wm. E. Dargan, on a bond made by them, and the said James H., also a surety, on which a balance was due, $2,897 10.

No judgment was rendered on these liabilities against James H. Dubose, but for them he gave his separate bond to Wallace for $10,000, to secure the payment of his proportion,

3. Isaiah Dubose is indebted to Martin Waller, $5,500:

4. And to Alfred G. Barton about $10,000.

5. The said Isaiah is also for a valuable consideration bound to pay the balance due on a note, made by said James H. Dubose, as principal, and others as his sureties, to the Branch of the Bank of the State of Alabama at Mobile, 3,000.

Dubose v. Dubose.

The deed, after the recital of this indebtedness, then conveys to James H. Dubose, about 4,700 acres of land in Alabama, including a plantation in Marengo county—thirty or more slaves, including those in controversy, horses, mules, plantation utensils, implements, &c., " and all the crops of corn and the cotton which is now upon the said plantation as well that which may be now in the field, as that which may have been gathered," (excepting from the conveyance a part which had been previously conveyed,) to have and to hold upon the trusts following, to wit:

That the said James H. "shall enter upon and take immediate possession" of the property conveyed, and "forthwith, or as soon as it may become necessary, to protect him, or all, or either of the parties of the third part;" or on the request of all or either of them he shall, in the manner prescribed, sell all or such part of the property " as may be necessary to protect from loss or injury and save harmless, either himself, or all, or any of said parties;—(The cotton to be sold in the usual manner, and the other property at auction;)—and the proceeds to be applied by him as afterwards directed." And until the whole of the real and personal property is sold, the said James H. Dubose shall continue to cultivate said plantation, or such part as may remain unsold, with the negroes which may be upon the said land, or such other negroes as he may procure, in such manner as may be most advantageous and profitable." " And the proceeds arising from all such sales of the crops, or of the real and personal property, or any part thereof, he shall first apply to the payment and discharge of these debts, aforesaid, on which the said James H. is individually liable or jointly with either of the aforesaid parties of the third part ; to be selected by him at his discretion. That is to say, he shall first pay off and discharge the said two debts due to the Branch of the Bank of the State of Alabama at Mobile; unless he shall prefer to pay the said debts due to the said Wallace before the payment of the said debts due to the said Bank;—he shall then pay off the said debts to the said Wallace;" and afterwards shall pay the debts due to Martin Waller and to Barton, &c.

The defendant objected to the introduction of this deed as

evidence, on the ground that it contained provisions which showed it to be fraudulent on its face.

This objection was overruled, and the Court allowed the deed to be read to the jury, and instructed them that it was not fraudulent on its face. The defendant excepted to the refusal to exclude the deed, as well as to the charge of the Court, and both are here assigned as error.

MANNING and BROOKS, for the plaintiff in error, argued that the deed is fraudulent and void.

1. Because it gives to the trustee discretionary power to pay certain debts in preference to others.

2. Because the interest of neither creditors nor sureties are fixed and determined by the assignment.

3. Because it places the creditors and sureties under the power and control of the assignee.

They cited Gazzam v. Poyntz, 4 Ala. Rep. 374; Barnum v. Hempstead, 7th Paige, 518; Clark v. Hyslop, 14 John. 458; Garland v. Rives, 4 Rand. 282; Ward v. Trotter, 3 Monr. 315.

J. T. LOMAX and F. S. LYON, for the defendant in error, insisted—1. That the case has no resemblance to that of Gazzam v. Poyntz, in which the deed was held void, because the trustee was invested with power to prefer one creditor before another. In this the preference is directed in the deed to be given to the debts due the Bank in the first instance, unless the assignee, who is liable as surety for them and other debts, shall elect to pay the other debts first. The power here given is not a discretion to the trustee, but a privilege awarded to a secured creditor, who without the clause to that effect could waive it at his pleasure. Neither the Bank nor Wallace have any interest under this deed, not being parties to it. [De Wolf v. Chapin, 4 Pick. 59.]

2. The object of this deed was to indemnify the parties named as the sureties of the grantor; and afterward the individual creditors designated. The liability of a surety is a valuable consideration to support a deed. [Stephens v. Bell, 6 Mass. 339.]

3. The question is, whether the deed is valid as a security between Isaiah Dubose and his sureties, as it was executed

for their indemnity.   An assignment by a debtor to one surety to pay all surety debts is valid; and if he is called on by a creditor not provided for, the trustee may retain for all payments on account of his liabilities; or for which he might still be liable as surety.   [Ripley v. Severance, 6 Pick. 474.]

MANNING and BROOKS in reply.—A creditor is entitled to the benefit of all securities which the principal has given to his sureties.   [Pitman on Principal and Surety, 40 Law Lib. 73; Manse v. Harrison, 1 Eq. Ca. Ab. 93, 11 Vesey, 12; Hyslop v. Clark, 14 John. 463.]   Therefore the discretion given the trustee to select between the Bank and Wallace might be prejudicial to the former.

GOLDTHWAITE, J.—1. We shall consider the charge asked for by the defendant as intended to elicit from the Court the opinion, that this deed, for matters apparent on its face, is fraudulent and void *as against the creditor of the grantor ;* but stating it even in this manner, we think its refusal was correct.

The object of this conveyance, as expressed on its face, is, that the grantor being "willing and anxious fully and completely to secure, indemnify and protect the said James H. Dubose, and the several parties of the third part, in the payment of the specified debts, and to relieve the said securities from any and all loss, risk, cost, charge, or liability, arising from the said liabilities upon the said debts; and the more certainly to provide a fund for that purpose," therefore conveys the property therein described, to the debtor's principal surety, upon the trusts of which an abstract is presented in the statement prefixed to this opinion.

If the expressed intention of the grantor is carried into effect, it is difficult to conceive the idea of a legal fraud; for no creditor is hindered or delayed, any further than that a preference is given to those named.   The trustee is required to sell the trust property *forthwith ;* or so soon as it may be necessary to protect himself or either of the parties to the deed, from injury: and then, as if fearful of confiding to him the discretion to judge of the time when injury might happen, he is directed, upon the request of either of the parties of the

Dubose v. Dubose.

third part, to sell such part of the trust property, as may be necessary to protect them from loss or injury.

2. It is argued however that their request may be indefinitely postponed, or even never made ; and that thus, the trust property may be preserved for the use of the grantor against the attacks of other creditors. If this proposition could be maintained it would almost be conclusive against the validity of such a transaction. But, independent of the statutory right, which is given to any execution creditor to pay the indebtedness disclosed by the trust deed, and thus render the estate subject to his execution, (Clay's Digest, 256, § 6,) we think that any execution creditor can, by suit in equity, compel the preferred creditors to close the trust and distribute the surplus. This seems to be the result of certain other propositions, and was put as a *quere* in the recent case of Graham v. Lockart, supra, without any particular examination of the principles involved in it. We propose now briefly to consider them.

In England, from whence we derive our general ideas of mortgages, real property has a fixed value, to a great extent, and is not subject to the fluctuations incident to our own country, where land is so abundant and where personal prorperty is often more productive. This difference in the condition of the two countries has introduced into this a modification of many of the rules which formerly applied to conveyances, intended as securities merely. Thus, in our Courts, although the complainant proceeds for a strict foreclosure, the defendants may, in general, insist on a sale. We say in general, because it may not always be the rule, as there seems to be no sufficient reason to tax the property with the costs of a sale, where it clearly is insufficient to pay the debt, for which it is mortgaged, and the creditor is willing to extinguish the debt by a foreclosure. However the exception may be, it seems clear that the general rule is as stated. [2 Story Eq. 292, § 1025, 1026; 4 Kent, 1 ed. 156; Hitchcock's heirs v. Bank U. S Mss.]

As then the defendants to a mortgage bill may insist on a sale, instead of a strict foreclosure, it seems to follow, that any one entitled to redeem may insist upon a sale in the same manner. The mortgagor may be enabled to redeem the premises by a payment of the debt, even where that and a surplus

beyond, would be realized from a sale ; and yet, if the credit‑ or has the right to refuse a sale without payment, the risk of destruction and depreciation in value would remain with the debtor. On the other hand, conceding the estate not to realize the debt and costs, the latter only would be hazarded by a sale; for the mortgagee would always be a privileged pur‑ chaser to the amount of his debt. The risk of the costs of the sale could generally be ascertained by a reference to the mas‑ ter, and the sale refused, if indemnity for these was not given. [See cases before cited, and also Story on Bailments, 219, § 320.]

There is another cogent reason why an unpreferred creditor should be allowed to compel one secured by mortgage to close it at once, immediately connected with the risk of destruction and depreciation of value of the mortgaged estate. The debt would remain as a charge against the debtor, notwithstanding the depreciation or destruction of the property; and as the mortgage creditor, in the event of the debtor's death, and pos‑ sibly in some other instances also, would be let into distribution with other creditors for the sum remaining due after exhaust‑ ing his security, the risk is thus in effect thrown upon those other creditors.

The remarks we have made as to mortgages apply with equal force to conveyances in trust, and perhaps with greater; as the beneficiary in such has no estate in the trust property, and the resulting trust is with the mortgagor. The right to ascertain and subject this resulting trust pertains to any execu‑ tion creditor, who otherwise can not obtain the fruit of his ex‑ ecution. [Park v. Clinton, 12 Vesey, 59. See also Desha, Sheppard & Co. v. Wilson, et als. at the present term.]

We thus answer the principal objection to this deed, and have endeavored to show that no estate, whether real or per‑ sonal, by mortgage or deed of trust, can be placed beyond the reach of an execution creditor, if a surplus beyond the secured debt will be the probable result of closing the trust ; and that it may be closed by any such creditor, whenever there is no such probability, upon indemnifying the other party against the costs of suit and sale.

We do not think the inference of a fraudulent intention can be drawn from the discretion which is given to the trustee to

31

first pay either of the named creditors. He is the surety for both the debts, and the deed is made chiefly for his indemnity; the trust, in the first instance, is to pay the debt to the Bank, and for this the trustee is the only one of the beneficiaries liable. When, therefore, a discretion is given him to pay the other debt first, it amounts to nothing more than he would have the right to do, without the expression of the power, unless, as contended, the Bank is by the deed, invested with an absolute equitable right to priority.

3. Conceding the proposition asserted in this connection, that a creditor is entitled to the benefit of all the funds or property assigned to his debtor's surety, it cannot be said that the creditor is entitled beyond the condition of the assignment. Here, the condition is, that the surety liable for both debts, shall elect which shall first be paid. We deem it too clear to admit of illustration, that such a discretion involves no intention of fraud.

4. Another argument against the deed is, that the trustee is permitted to cultivate the land until sold, with the slaves which may be upon it, or such others as he may procure. This, it is said, involves the trust estate with the expenses of the slaves so procured, and therefore the property is not fairly appropriated for the indemnity of the sureties or creditors. This is answered, to some extent, by showing that all trusts of this nature may be closed at the instance of any execution creditor; and therefore no delay, prejudicial to him, can arise out of it. But independent of this, there is no reason why a debtor who is not insolvent, or in failing circumstances, should not provide for such an employment of his property. Until other rights intervene, he may do as he pleases with his estate, and it is no lawful prejudice to any one. Here we never hear of any other creditor than those named in the deed, until the levy of Maywood's execution; and that does not affect the conveyance made at a time when he was without a legal right to coerce payment.

We can see no error in the record.

Judgment affirmed.