BEALL AND BEALL v. WILLIAMSON.

1. The validity of a mortgage executed in Georgia, must be determined by the law of that State, and in the absence of proof, it will be presumed that the common law obtains there.
2. The act of 1823, requiring a mortgage on property which may be removed to this State from another State, to be recorded within twelve months, makes such property, if the incumbrance is not recorded, liable to the debts of the person in possession, but is silent as to purchasers; a purchaser therefore, though without notice of the mortgage, is not within the influence of the statute, if the mortgage was valid in the State where it was executed.
3. The retention of possession by the mortgagor after the law day, is not conclusive evidence of fraud, but may be shown to be consistent with fair dealing.
4. An intent on the part of the mortgagor and mortgagee, to defeat the creditors of the former, in the State of Georgia, will render the mortgage fraudulent, as against creditors and purchasers from the mortgagor in this State.

Error to the Circuit Court of Lowndes.

DETINUE for a slave, by the plaintiffs in error, before the Hon. E. Pickens.

The questions of law arise out of a bill of exceptions, presenting the following State of facts. The plaintiffs claimed through a mortgage, executed by one Fleming, in Stewart county, Georgia, made to secure a promissory note of the

same date, for $725. The mortgage bore date in April, 1842, and the law day was one day after. It was proved, Fleming owed plaintiffs the debt at the time, and was also indebted to other persons, and if there was any balance left, after paying them, it was to be secured to Fleming, against his other creditors.

In the fall of 1842, after default had been made, Fleming left the State of Georgia secretly, and without the consent of the plaintiffs, and came to Lowndes county, in this State, and they ascertained his residence here, about twelve months after. On the 16th December, 1843, Fleming sold the slave sued for to one Carter, for a valuable consideration, without notice of plaintiffs' mortgage. One witness proved the slave to be worth $900, and Fleming, who was introduced as a witness, stated it was worth about $1400. The court charged, that if the defendant purchased the slave without notice of the mortgage, the plaintiff could not recover. That if there was an intention on the part of Fleming, at the time he made the mortgage, to defeat his other creditors, and such intention was known to the plaintiffs, and assented to by them, the plaintiffs could not recover. To these charges the plaintiffs excepted, and now assigns for error.

T. H. Watts, for plaintiffs in error.

The questions arise on the charges given by the court below, as shown by the bill of exceptions.

I.—1. There is no statute in this State requiring mortgages made in another State, to be recorded, except the statute of 1823, found in Clay's Dig. 255, § 1. This statute renders the mortgaged property liable to the payment of debts contracted by the holder thereof, unless recorded within twelve months after removal here. It has no application to, and does not protect purchasers, without notice of the mortgaged property.

2. After the law day, or failure to pay, the mortgagee has a complete legal title to the mortgaged property; and the mortgagor has a bare equity of redemption. See Hopkins v. Thompson, 2 P. 433; 2 Story's Com. Eq. §1030-31; 4

Kent, 154; Coker v. Pearsall, 6 Ala. 542; Willis & Co. v. Bank, 5 Ala. 770. The possession of the mortgagor is consistent with the rights of the mortgagee. See case last cited above.

3. If the mortgagor sells, he can convey no more title than he possesses, viz: an equity of redemption. *Caveat emptor* applies with all force in such a case; and the rights of the mortgagee are not affected by the sale. See 4 Kent, 161; 2 Story, 372, § 1030-31; Williams et al. v. Merrill, 11 Wend. 81; Prescott v. DeForest, 16 Johns. 159; Everet v. Coffin, 6 Wend. 609. See particularly Saltus v. Everett, 20 Wend. 267. See also, Hoffman v. Caron, 22 Wendell, 285; Swift v. Fitzhugh, 9 Porter, 70; Smoot v. Fitzhugh, 9 Ib. 74.

II. The second charge is wrong. Fraud does not consist merely in intention—there must be coupled with such intention an act to make it fraudulent. The charge assumes as law, that the intention of Fleming, without being coupled with an act, would be fraudulent in him; and would affect the rights of plaintiffs, if merely assented to by them. But mere assent to the fraud of another, would not affect their rights—there must be some act coupled with the assent, 1 Story's Eq. 197-99.

III. But if the last charge is right, the first being clearly wrong, this court must reverse, because it cannot undertake to say, under the influence of which charge the jury found the verdict for the defendant.

T. J. JUDGE, for defendant in error.

1. It might be contended, if it were necessary, that the spirit and meaning of our registration acts required, that plaintiffs' mortgage should have been recorded in this State, after the removal therein of the property mortgaged, to make it valid against creditors and purchasers without notice.— See Clay's Dig. 255, § 4, 5. See also the reasoning and decisions of Chief Justice Marshall, in Hodgson v. Butts, 3 Cranch, 155, relative to the construction of the Virginia statutes of registration.

2. But independent of all statutory regulation, the first

8

charge given was clearly correct. For where personal property is mortgaged, and remains in the hands of the mortgagor, if he sell it to a *bona fide* purchaser without notice, such sale is valid. It is on the principle, that "the mortgagee is under no necessity of taking such a security, and if he does take it, upon him lies the peril of fraud in the mortgagor, because he is the party who has reposed the trust, and given the mortgagor the opportunity of injuring an innocent third person." See Lewis and Lewis v. Stephenson, 2 Hall, 63, which is precisely in point, and decisive of the present case.

4. But the first charge given was correct for another reason, viz: Plaintiffs ascertained the residence of Fleming, the mortgagor, within twelve months after his removal from Georgia; they made no efforts to foreclose their mortgage, but permitted Fleming, the mortgagor, and Carter, the vendee of Fleming, and vendor of defendant in error, to retain possession of the property for years, and thereby conferred upon them the apparent right of property, or right of disposal. This precludes them from recovering against defendant, who is an innocent purchaser without notice. See Dyer v. Pearson, 3 B. & C. 2; 4 D. & R. 38; and Mowry et al v. Walsh, 8 Cowan, 238; See also Saltus and Saltus v. Everett, 20 Wend. 267, which case is cited and mainly relied on by plaintiffs in error.

5. *Caveat emptor* does not apply to a case of purchase like the present; and the authorities cited by the plaintiffs in error, do not establish the proposition that it does.

COLLIER, C. J.—The mortgage under which the plaintiffs claim the slave in question was executed in Georgia, and its validity must be determined by the laws of that State. It is well settled in this court, that in the absence of opposing proof, it will be intended that the common law of England, so far as applicable to our institutions, is in force at least in the States once subject to its influence. Applying the principles of this system, and we can discover nothing to affect the operation of the mortgage where it was made; indeed, it is not denied that it was valid in Georgia. Assuming this to be the case, it must be an operative security in this State, unless there be something in our laws limiting or

prohibiting its effect. The registration of deeds of every description is a matter exclusively of municipal regulation, and we cannot know what the legislature of a sister state have enacted upon the subject. The question then is, whether any statute of this state impairs the operation of the mortgage as against the defendant?

It is enacted by the act of 1823, "to prevent fraudulent conveyances," that "all property mortgaged, or under any deed of trust, or other legal incumbrance, which may afterwards be removed to any county in this state, shall be liable to the payment of any debts which the holder of such mortgaged property may contract, after his settlement in such county; unless the mortgage, deed of trust, or incumbrance covering such property removed as aforesaid, shall be duly recorded in the clerk's office of the county court of the county to which such property may be removed, within six months; unless the person bringing such incumbered property into any county in this state, shall have removed from another state, in which case, one year shall be allowed for the recording of any such mortgage, deed of trust, or other legal incumbrance, after such settlement as aforesaid." Clay's Dig. 255, § 4. The time prescribed by this act, within which a "legal incumbrance" on property brought from another state to this, must be recorded, is one year after the "settlement" of the party bringing it; and the consequence of a failure thus to record the incumbrance, is a liability of the incumbered property to the payment of the debts of the holder, contracted after his settlement here. In no just sense can the purchaser of mortgaged property removed to this state, be said to be the creditor of his vendor. No debt is created in his favor, and if the property is delivered and paid for, the transaction is closed; but if the purchase money is not paid, the vendor becomes a creditor *pro tanto*, and the vendee trusts him for the validity of the title and the soundness of the chattel. The mere contingency that there may be a breach of these latter stipulations, cannot make the vendor a debtor of the vendee, until it actually occurs; and the liability of the vendor in the present case, does not become complete until the plaintiffs recover the slave. In Avent v. Read, 2 Stew.

Rep. 488, it was held, that the act of 1811, which made the registration of deeds necessary as against subsequent and bona fide purchasers and mortgagees without notice, did not apply to creditors; and that consequently a purchase at a sale by a sheriff under *fieri facias*, with notice of the deed acquired after the judgment and levy, would stand in the same predicament as if he had purchased under a contract with the defendant in the judgment.

It has been decided, where a mortgage of personal property is recorded according to the laws of the state where it was executed, if the mortgagor afterwards move into another state, and take with him the property, registration of the mortgage in the latter state is not necessary to its validity. Offutt v. Flag, 10 New Hampshire Rep. 46. See also, Harmon v. Tuft, 1 Tyler's R. 9; Bruce's Administrators v. Smith ; 3 Har. & Johns. Rep. 499. By a statute of Maryland, a mortgage of personal property, of which the mortgagor retains possession, is void so far as the rights of creditors are concerned, unless acknowledged and recorded as therein directed; but although not recorded at all, or within the time, it has been held effectual against the mortgagor and all claiming under him. Claggett v. Salmon, 5 G. & Johns. Rep. 314. The citations we have made abundantly show, that the effect of an omission to register a deed must depend upon the terms of the statute which makes registration necessary ; and that it does not follow, if an unrecorded deed be void against creditors, it is inoperative against purchasers without notice.

In the P. & M. Bank of Mobile v. Willis & Co. 5 Ala. R. 770, it was regarded as an established principle, that in the case of a mortgage of chattels, the retention of possession by the mortgagor up to the period of forfeiture, is entirely consistent with the deed, although there is no express stipulation to that effect ; and of consequence it does not make the security *prima facie* fraudulent. We also said, "It may be conceded that it is in general the duty of the mortgagee to avail himself of his security when the mortgage becomes for-

feit, and if he delays the institution of a suit for an unreasonable time, or fails to possess himself of the mortgaged property, the inference will be, in a controversy between himself and a stranger, that the debt has been paid; but this is a *mere presumption*, and may be repelled by evidence." "If the transaction was fair in its inception, it cannot be denounced because the mortgagee has not availed himself of his rights *secundum stricti judice.*" See cases cited in the opinion; also, Ravesies v. Alston, 5 Ala. Rep. 297; Dubose v. Dubose, 7 Ala. Rep. 235; Elmes v. Sutherland, Id. 262; Holbrook v. Baker, 5 Greenl. R. 309; Shurtleff v. Willard, 19 Pick. Rep. 202. It was added, that it might be proved "that the indulgence of the mortgagee was compatible with fair dealing, and induced by no intention to favor the mortgagor to the prejudice of his creditors. It must, from the very nature of the case, be a question of fact for the solution of the jury, what length of time, unexplained, would make the mortgagor's possession conclusive evidence of fraud on the part of the mortgagee." Marden v. Babcock, 2 Metc. R. 99. In the case at bar, it could not be predicated of the neglect of the mortgagees to take possession of the slave in Georgia upon the maturity of their debt, that it was satisfied, or that the mortgage was fraudulent in its creation. As it respects the possession of the mortgagor in this state, it does not appear that the mortgagees were aware of his location until about the time he made a sale to the person under whom the defendant claims, so that no conclusion prejudicial to the plaintiffs rights, can be drawn from the mortgagor's possession after he left Georgia. It should have been referred to the jury under a charge adapted to the facts, to determine whether the mortgage was fraudulent when executed, or whether it had not become inoperative against a purchaser without notice by something *post factum.*

In Doe ex dem Duval's heirs v. McLoskey, 1 Ala. R. 708, it was held, that the mortgagee, in the absence of a stipulation to the contrary, is entitled to the possession of the mortgaged property, at least from the time the mortgage is forfeited; and may either sue at law to recover the debt, or the the mortgaged estate; or he may go into equity and obtain a decree of foreclosure and sale. This being the case, the

title of the mortgagee after forfeiture, is a legal one, and that of the mortgagor reduced to a mere equity, and to a purchaser from the latter the doctrine of *caveat emptor* applies; for it is settled that this principle will prevent a divestiture of legal rights, although equitable interests may be lost by a sale to a *bona fide* purchaser without notice, by one having the legal estate. Taylor v. Stone, 2 Munf. Rep. 314. The case of Lewis and Lewis v. Stephenson, 2 Hall's Rep. 63, certainly determines that the possession of the mortgagor will give to a *bona fide* purchaser from him, without notice, a title which will defeat the mortgagee. We are however constrained to think, that that decision was influenced by a statute of New York, which considers a mortgagor in possession as invested with a legal title, and gives to the mortgagee a remedy in equity only. But however this may be, it rests upon reasoning altogether unique, and we cannot recognize its authority. See Saltus v. Everett, 20 Wend. R 267.

2. If it was intended by the mortgagor, when the mortgage was executed, to defeat his other creditors, by appropriating the proceeds of the mortgaged property, above what was necessary to pay the plaintiff's debt, to his own use; and this intention was known to the plaintiffs, assented to, and promoted by them, then the mortgage is void under the 2d section of the statute of frauds. Clay's Dig. 254, § 2. The fact that the mortgagor was indebted to the mortgagees, will not support the security to the extent of that indebtedness, if it was not made *bona fide*. Where there is an actual intention to delay, hinder and defraud creditors, participated in by both parties, it is fraudulent *in toto*, and cannot be supported to any extent. Moore & Paine v. Tarlton and Paine, 3 Ala. Rep. 444; Stover v. Herrington et al. 7 Ala. R. 142; Boreland v. Walker et al. Id. 269; Borland v. Mayo, 8 Ala. Rep. 104. The second charge was in conformity to these views—was adapted to the facts, and is therefore free from error. See also, Ward v. Trotter, 3 Monr. Rep. 1; McGowen v. Hoy, 5 Litt. R. 239; Bucklin v. Thompson, 1 J. J. Mar. Rep. 226; Hundley v. Webb, 3 Id. 653; West v. Dubberly, N. Car. T. Rep. 38; Hawkins et al. v. Ingals, 4 Blackf. R. 35; Briscoe et al. v. Clarke, 1 Rand. Rep. 213; Garland v.

Rives, 4 Rand. R. 282; Hills v. Elliott, 12 Mass. Rep. 26; Hutchinson et al v. Kelly, 1 Robinson's Rep. (Va.) 123; Bank of Alexandria v. Patton, Id. 500.

It is supposed by the defendant in error, that as the jury would have been justified in finding for the defendant under the second charge, that the judgment cannot be reversed for the error of the first. All the facts were before the jury for their consideration, and it cannot be known whether they did not discard some, and give credence to others, or on what grounds they rested their verdict. The first charge may have inclined the scale against the plaintiffs, and the last have had no influence. In this state of inexplicable uncertainty as to the influences which operated upon the jury, we cannot attribute their finding exclusively to so much of the ruling of the court, as is agreeable to law. The judgment of the circuit court is consequently reversed, and the cause remanded.