## DICKMAN & HILL *v.* W. M. WILLIAMS.

1. PRACTICE — CIRCUIT COURT — ATTACHMENT. — When an attachment is levied on property, and a claim is set up by a third party, and the controversy is between the attaching creditor, and the claimant presents an issue, the plaintiff in the attachment holds the affirmative of the issue, and must show the concurrent circumstances, which would warrant a sale of the property for the payment of his debt. He must prove that the defendant in attachment owes the debt or some part thereof.

2. SAME — SHIPMENT — STOPPAGE IN TRANSITU. — B. shipped 8 bales of cotton to D. & H., of New Orleans, on account of Weisenger, by the steamer Magenta, to be sold by D. & H. on account of Weisinger. Whilst *in transitu*, the cotton was attached by W., and D. & H. made affidavit claiming the cotton, and presented an issue to try the rights of the respective parties. If goods are shipped by the order of the consignee and for his account, where the consignee sustains the relation of purchaser, the moment the goods are delivered to the carrier, they have passed from the seller and are the property of the vendee, as completely as if they had actually come to his possession, subject, however, to the right of stop-

page *in transitu*, if the purchaser has become insolvent. But where the goods are shipped without order, and on account of the shipper, he stands towards the consignee as principal, and the consignee sustains the relation of agent or factor, and the shipper continues the owner and may generally order and direct the disposition of the goods, or even reclaim them.

3. SAME — SAME — ADMISSIONS OF AN AGENT — CASE IN JUDGMENT. — The general rule is, that where the acts of an agent will bind the principal, admissions of the agent respecting the subject matter of the agency will also bind him, if made at the same time, and constituting a part of the *res gestæ*. Such admissions are regarded as verbal acts and part of the *res gestæ*, and may be proved without calling the agent himself. Declarations to be part of the *res gestæ* must be made during the negotiations or progress of the business of the agency, and be of such a nature as to give character to the acts done.

ERROR to the Circuit Court of Warren County. Hon. GEO. F. BROWN, Judge.

The facts of the case are sufficiently set out in the opinion of the court.

The following are the assignments of error, to wit:

1. In overruling claimant's objection to, and admitting in evidence, the copy of the collector's permit.

2. In refusing claimant's second instruction.

3. In granting plaintiff's instruction, the fifth in the record.

4. In overruling claimant's motion for a new trial.

5. In overruling claimant's objection to the statement of Pharr.

*M. Marshall*, for plaintiff in error.

The *onus probandi* was on the plaintiff in attachment to show that the property levied on was liable to his attachment. Rev. Code of 1857, pp. 381, 533. And to do this they must show by proper evidence, two things: 1. The right as against the defendant in attachment. 2. That the property levied on is subject to the right. Mandel v. McClure, 14 S. & M., 11. The only evidence adduced was the testimony of W. M. Williams (one of the plaintiffs in the attachment), supplemented by the copies of two instruments of writing, to wit: the bill of lading under which the

cotton was in transit when levied on, and the permit of the collector of U. S. internal revenue, for the removal of eight bales of cotton from the internal revenue district in which the cotton was produced and marked.

The testimony of said witness, leaving out of consideration the copies attempted to be proven by him, amounted to this : He sued out the attachment, pointed out the property, eight bales of cotton on steamer Magenta, shipped and en route for New Orleans, La., consigned to Dickman & Hill; that after the levy and before claimants prepared their papers, one Pharr, who made claimants's affidavit, had a conversation with witness in Vicksburg (claimants residing in New Orleans), in which conversation Pharr said that he wished to compromise or settle the matter without litigation or expense, and if witness would drop his attachment and let the cotton go to New Orleans to Dickman & Hill, that they would, *after the amount due* them by Weisenger for advances was satisfied, pay the plaintiff's (in attachment) claim against said Weisenger out of any balance to Weisenger's credit out of the proceeds of this cotton or any other hereafter sent. That Weisenger was indebted to Dickman & Hill, and this cotton was shipped them to pay that debt.

Applying this evidence to the law as laid down in the 1st, 3d and 4th instructions as to the burden of proof, and the effect of such consignment, the plaintiff clearly failed to make out his case, and the claimant was entitled to a verdict. A copy of the bill of lading was inadmissible, when the original could have been procured.

The court instructed the jury that " when the bill of lading contains the words ' for account of' a certain party, the article consigned is *prima facie*, the property of the party for whose account it is shipped, and not of the consignee." This was error, and if correct in the abstract, the court should not charge the jury upon abstract principles of law, not applicable to the case. Myers v. Oglesby, 6 How., 46; Powell v. Mills, 8 George, 691; Jarnigan v. Fleming, 43 Miss., 710 ; Evans' Case, 44 Miss., 762.

The court, in charging a general principle of law, to which there are exceptions applicable to the evidence, should explain the exception. Cohea v. Hunt, 2 S. & M., 227; Baker v. Kelley, 41 Miss., 696; Young v. Powell, 41 Miss., 197. The plaintiff must show that he has a demand against the defendant, before he could show that the property levied was subject to that claim, this has been held in Berry v. Anderson, 2 How., 649; Mandel v. McClure, 14 S. & M., 11; Whitehead v. Henderson, 4 S. & M., 704; Ford v. Hurd, 4 S. & M., 683; Maury v. Roberts, 5 Cush., 225.

*W. B. Pittman,* for defendant in error:

The issue in the court below was one of fact, to wit, whether the cotton levied on was the property of the claimants Dickman & Hill, or to defendant in attachment, Weisenger, the jury found against the claimants, and the court below refused a new trial. This court will not inquire whether there was sufficient evidence to sustain the verdict, or whether the verdict was clearly right, but whether it was manifestly wrong. Waul v. Kirkman, 13 S. & M., 599; Prewett v. Coopwood, 1 George, 369. Williams proves that Pharr, the agent of claimants, admitted that the cotton belonged to defendant in the attachment, that it was shipped by him to plaintiff in error as his factor, to pay what he owed them, and offered, in the name of plaintiff in error, to hold any balance the cotton might bring over and above their debt; the record shows that Pharr was the agent, and his admission for them was binding on them, and it was properly admitted. The bill of lading, not objected to, shows that it was for account of Weisenger, and that the ownership was in him; this would sustain the verdict in the absence of all other proof to the contrary. Where a debtor, by bill of lading, consigns cotton to his factor for the payment of a debt, such consignment does not change the title to the property, and it is still liable to attachment by the shipper's creditor. Bonner v. Marsh, 10 S. & M., 376.

As to the first assignment, to wit: The admitting of the collector's pursuit. The record shows that the original was in the

hands of the United States government, and could not be obtained; it was, therefore, proper to admit the secondary evidence.

The second assignment of error is, that the court erred in refusing to instruct the jury, that the plaintiff below must show a judgment against the defendant in the attachment in order to prevail in the claimant's issue. On this point, it is only necessary to cite the case of Melins v. Houston, 41 Miss., p 59. See also Rev. Code, 1857, art. 38, sec. 381.

The third assignment is, that the court erred in granting plaintiff's instruction, five, in the record. This instruction is admitted to be good law, but it is claimed to be an abstract principle of law, not applicable to the case, and likely to mislead the jury. The record shows, that the bill of lading in this case contains the very words used in the instruction, to wit: "for account of T. B. G. Weisenger," and was, therefore, an instruction in effect in law of a written contract offered in evidence.

In addition to this, even if the court had erred in giving such an instruction, this court would not reverse the judgment unless it could be shown, that such instruction was calculated to mislead the jury, which has not been shown in this case.

SIMRALL, J., delivered the opinion of the court.

This is a controversy between the attaching creditor and a claimant of the property.

It appears that the eight bales of cotton were on board the steamer Magenta at Vicksburg, to be transported to New Orleans, under a bill of lading, to be there delivered to the consignees, Dickman & Hill. The cotton was shipped by John W. Boyd, at Shell Mound Landing, on the steamer Countess, on account of T. B. G. Weisenger, with the privilege of reshipment, and under that stipulation was, at Vicksburg, transferred to the Magenta. The bill of lading was, without objection, put in evidence to the jury.

The burden was upon the attaching creditor to show that the cotton was the property of his debtor, Weisenger, in such sense as made it liable for his bebt. The only evidence in support of that proposition was the bill of lading and the statements of Pharr, the agent of the claimants, in making affidavit to their claim and executing bond for them (which statements were objected to by the plaintiffs, as incompetent testimony). ·

Diverse views have been advanced in argument, as to the effect of the bill of lading, as evidence of ownership. Most of the cases to be met with in the books, range themselves into one or the other of two classes. First, a shipment of goods by the consignee, by his order, and for his account, where the consignee sustains to the consignor the relation of purchaser. The moment the goods are delivered to the carrier, they have passed from the seller, and are the property of the vendee, as completely as if they had actualy come to his possession, subject, however, to a right of stoppage in transition, if the purchaser has become insolvent. Such are the cases of Stokes v. La Rivere, 3 T. Rep., 466 ; Hodgson v. Loy, 7 T. Rep., 440.

The other class is a shipment of goods without order, and upon account of the shipper, where the shipper stands towards the consignee as principal, and the consignee sustains the character of agent or factor.

In these circumstances, the shipper continues the owner, and the consignee is his agent and subject, generally, to his orders as to the disposition of the property. The shipper may ·at any time reclaim the goods before they have been actually sold. If the factor be a creditor of the shipper, he does not acquire a lien upon the goods, or any specific right, until they have actually come to his possession. Walter et al. v. Ross et al., 2 Wash Cir. Court Rep., 288 ; Bonner et al. v. Marsh et al., 10 S. & M., 381–3 ; 2 Kent's Com., 499.

In the case before the court, the cotton, when attached, was *in transitu* to New Orleans, consigned to Dickman & Hill, for sale for

account of Weisenger. It does not appear that they had ordered the cotton, were owners, or had any interest in it. The bill of lading imports a right in Weisenger to control the cotton or its proceeds. If the testimony of Pharr, the agent, was competent, he gives a complexion to the case precisely analagous to that of Bonner v. Marsh, 10 S. & M., *supra.* There the cotton was on board a boat at Natchez (when attached), consigned to Bonner & Co., who were factors, and to whom the shipper was indebted, yet it was held that the shipment for the purpose of liquidating the debt, did not give a right of property to the factors.

But were not the statements of the agent competent, the exception taken being that such agency was not shown as authorized Pharr to speak for his principal?

The general rule is, that where the acts of the agent will bind the principal, admissions respecting the subject matter will also bind him if made at the same time, and constituting part of the *res gestæ.* 1 Greenl. Ev., § 113; Story's Agency, § 134 to § 137. Such admissions are regarded as verbal acts, and part of the *res gestæ,* and may be proved without calling the agent himself. Ib. ; 1 Greenl. Ev., § 114.

Williams, in his testimony, states " that at the time Dickman & Hill claimed the property, but before they had made out the papers, Pharr, who made the affidavit, had the conversation with the witness " (the said Dickman & Hill residing and being in New Orleans * * ).

Declarations, to constitute a part of the *res gestæ,* must be made during the negotiation or progress of the business of the agency, and be of such nature as to give character to the acts done. Fogg v. Child, 13 Barb., 251; Dorne v. Southwork Man. Co., 11 Cush., 205. Here the declarations of Pharr were made about the claim of Dickman & Hill to the cotton, and while he was taking measures to assert it, and come within the rule we have laid down.

But the objection specifically made to their competency was, that proof had not been offered of any appointment or authority

to act. On that point it is sufficient that Dickman & Hill have adopted his acts by litigating the claim in this suit, which he made on their behalf, and, *pro hac vice*, he is their agent, and they are bound by his admissions in conducting the business, as verbal acts. It is proper, therefore, to have admitted this testimony to the jury. It tended to show that Weisenger was forwarding this cotton to his factors for sale, to liquidate advances made by them to him, and to hold the balance subject to his control. This gave them no right of property in the cotton before it actually came to their possession, and left it subject to the plaintiff's attachment. It is in all respects like the case cited in 10 S. & M., *supra*.

The only remaining question is whether it was incumbent on the plaintiff to show a judgment against Weisenger. The court declined, at the instance of the claimants, so to instruct the jury.

And in so doing, followed the decision in Sherwood v. Houston, 41 Miss. Rep., 61, 62, in which it was held that the claimant was not bound to wait until judgment is rendered against the original defendant. Because, as said by the court, "his claim of property presents a matter of individual right in him independent of the indebtedness of the defendant to the plaintiff in attachment."

Is that so? The statute places the plaintiff in attachment in precisely the same attitude towards the claimant, as if he were plaintiff in detinue, and the claimant were defendant thereto. In that action the plaintiff must show his right of property and possession, and the defendant would succeed by showing a good outstanding title in a stranger quite as well as proving such title in himself.

In the claimant's issue the plaintiff in attachment holds the affirmative of the issue, and must show the concurrence of circumstances which would warrant a sale of the property to pay his debt, and the claimant may remain passive and rest in security until the plaintiff has made affirmative proof. Manifestly one fact he must prove is that the defendant in attachment owes the

debt or some part of it.    Suppose the claimant should offer testimony, to prove that the debt had been paid by the debtor, and claim therefore, that the plaintiff had no right to proceed against the property ; that it would seem in some stage of the litigation must be open to inquiry.    The real inquiry between the plaintiff and claimant is, whether or not the property is liable to pay the debt of defendant in the attachment.    And if the creditor fails to show indebtedness, he comes short of showing any right to meddle with the property.    Such, in numerous cases, have been the views of our predecessors, not merely that the indebtedness must be established, but that it must be manifested by a judgment.    In Tiffany & Co. v. Johnson & Robinson, 27 Miss., 227, it is said : "It was error to render a final judgment against the claimant before the plaintiff's claim was fixed against his debtor by a judgment against him.    The right to recover depended on two things.    First, the establishment of the debt against the original defendant, which was the very foundation of his claim ; second, that the property was subject to the satisfaction of the demand as the property of defendant.    The first step is the most important, and is indispensable, otherwise the creditor might perfect his judgment and enforce it by execution against the claimant, without any establishment of his demand, and when indeed he might have no legal demand against the original debtor."    This reasoning is cogent and very satisfactory to our minds.    In the earlier case of Mandel v. McLure, 14 S. & M., 12, the same conclusion was reached upon the same line of reasoning.    The chief justice declared : " The right to recover of the claimant must rest upon an established liability of the defendant in attachment."    " The attachment itself does not give a right to sell the property.    A judgment is necessary to give effect to the attachment lien."

The condition of the claimant is much like that of a garnishee, and it has been settled as to him that there must be judgment against defendant in attachment.    Berry v. Anderson, 2 How., 649; Whitehead v. Henderson, 4 S. & M., 704; Ford v. Hurd, ib., 683.

The propriety of a judgment against the original defendant, may be made manifest by illustrations. Suppose that A. has executed a mortgage embracing chattels to B., who does not immediately put it upon record. C., a creditor of A., levies an attachment on the goods before the registration of the mortgage. Suppose further that the mortgagee has personal knowledge that the debt of the attaching creditor has been satisfied, manifestly upon the trial of the claimant's issue between the attaching creditor and mortgagee, the latter ought to be allowed to show that the debt has been paid. If that be so, then upon the trial of such issue (if before the creditor has recovered judgment against his debtor), the plaintiff would be required to prove the indebtedness of the original defendant to him; and the claimant could contest the debt upon all the grounds, such as payment, failure of consideration, etc., which might be set up by the debtor. That would include in the trial of the claimant's issue, and that could be litigated in the attachment suit by creditor and debtor. This shows the propriety of the rules laid down in all the earlier cases. That there shall be an ascertainment of the indebtedness and the amount by judgment, so that on the claimant's issue, the range of inquiry shall be limited to the liability of the property to be sold to pay the established debt. For if the rule laid down in 41 Miss. be adhered to, there can be no escape from the necessity of trying, on the claimant's issue, the question of debt or no debt, with all the defenses thereto, as well as the liability of the property to pay it. The statute does not intend that both suits shall be tried in one issue. But assumes that the creditor has contested with his debtor, as to the debt, and obtained judgment, and provides the claimant's issue, to determine the liability of the property for it. If the court, in Sherwood v. Houston, 41 Miss., had considered the antecedent cases, and overruled them, we should cheerfully have followed that decision; but there is no reference to them. We are inclined to think that had the preceding cases been brought to the notice of the court, it would have conformed its judgment to them.

There is no evidence in this record that the plaintiffs in attachment had established their debt against Weisenger, and the statement of the law to the jury on that point was erroneous.

For these reasons the judgment of the circuit court is reversed, and remanded, and a *venire facias* awarded.