CHARLES CHAFFE ET AL. *v.* MISSISSIPPI AND TENNESSEE RAILROAD CO.

COMMON CARRIER. *Consignor and consignee. Change of destination.*

A debtor who ships cotton through a common carrier to his factor and creditor for sale and application to the debt, and sends the bill of lading, may afterwards change the shipment to another person without making the carrier liable to the first consignee.

APPEAL from the Circuit Court of Grenada County.

Hon. SAM POWEL, Judge.

The appellants, commission merchants in New Orleans, La., agreed with S. Barbee, a store-keeper in Mississippi, that they would advance him money at a specified interest and commissions during the year 1880, and that he should ship them cotton, which was to be sold by them for his account and the

proceeds applied to its payment. Advances were made and cotton shipped accordingly, and, on Jan. 31, 1881, he owed them one hundred dollars. On that day he delivered to the appellee's agent the two bales of cotton in controversy, which were loaded on the cars for transportation to New Orleans, to be disposed of under the contract, and took and mailed to the appellants with a letter of advice, as was his custom, this receipt : —

" Mississippi & Tennessee Railroad, Oakland Station, January 31, 1881.

" Received of S. Barbee the following packages or articles, marked as per margin, in apparent good order: —

| Marks and Destination. | Description of Articles. | Freight. | Rate. | Condition. |
|---|---|---|---|---|
| S. B. 107 and 108. Chaffe, Hamilton & Powell, New Orleans, La. | Two (2) B. C. | | | |

" W. H. CRENSHAW, Agt."

The freight by the agreement was to be paid by the appellants and charged to Barbee's account. Afterwards, Barbee, who, it is admitted, had no actual intention of transferring the title or parting with control, applied to the agent to change the destination of the cotton, and threatened to take legal process if he refused. The agent, therefore, shipped the cotton to Barbee's factors in Memphis, although he knew that the receipt had gone to New Orleans. Barbee received the proceeds of sale from his Memphis merchants, and soon afterwards he became insolvent and made an assignment. The appellants had made no specific advances on these two bales of cotton, and gave Barbee no credit on his account. They, however, brought suit for the conversion of the cotton against the railroad company, which defeated a recovery in both the Justice's and the Circuit Courts.

*J. J. Slack*, for the appellants.

On delivery of the cotton to the carrier, which was the consignee's agent, the factor's lien attached, and its destination could not afterwards be changed by the consignor. *Wade* v.

*Hamilton,* 30 Ga. 450; 1 Parsons on Contracts, 70, 100 ; 3 Parsons on Contracts, 261.    The legal presumption is that title vests in the consignee as soon as the shipment is made.    *Bailey* v. *Hudson River Railroad Co.,* 49 N. Y. 70; Hutchinson on Carriers, §§ 104, 106, 136.    Advances were made to Barbee, who agreed to ship this cotton, and when he sent the bill of lading to the appellants, the title vested in them.    *Bailey* v. *Hudson River Railroad Co.,* 49 N. Y. 70 ; *Burritt* v. *Rench,* 4 McLean, 325 ; *Arbuckle* v. *Thompson,* 37 Penn. St. 170.    This is unlike the case of a general shipment without an agreement, and for the proceeds of which the consignor is to draw.    *Bonner* v. *Marsh,* 10 S. & M. 376 ; 2 Kent Com. 645.

*E. C. Walthall,* for the appellee.

The cotton in this case was the property of the shipper. *Bonner* v. *Marsh,* 10 S. & M. 376 ; *Dickman* v. *Williams,* 50 Miss. 500 ; *Wolfe* v. *Crawford,* 54 Miss. 514 ; *The Frances (Irvin's Claim),* 8 Cranch, 418.    Consignees have *prima facie* the right of possession, and may maintain replevin when the carrier has the goods and refuses to deliver.    *Butler* v. *Smith,* 35 Miss. 457.    But when the consignor is known to the carrier to be the owner, his right to control is clear.    *Southern Express Co.* v. *Dickson,* 94 U. S. 549; *Halsey* v. *Warden,* 25 Kansas, 128. No principle of estoppel applies to this case growing out of the shipping receipt being issued and forwarded to the consignees. If on the faith of the shipping receipt the consignees had parted with anything, or had suffered any loss on account of its having been issued, it would be different.    *Armentrout* v. *St. Louis Railway Co.,* 1 Mo. App. 158.

*W. P. & J. B. Harris,* on the same side.

Shipments of cotton to commission merchants to be sold and the proceeds applied to pay advances made by them, differ from sales of goods and their shipment in accordance with the orders of the purchaser, and also from consignments of goods in payment of advances made specifically upon the things consigned.    In the latter cases the consignee is the owner from the moment of shipment ; but, in the former, the commission merchant, even after he actually receives the cotton, is a mere agent to sell it, with, at best, a factor's lien for his advances, which does not attach until the cotton comes into his hands.

*Bonner* v. *Marsh*, 10 S. & M. 376 ; *Dickman* v. *Williams*, 50 Miss. 500.  The shipper, as the owner of the goods, has power to change their destination.  Hutchinson on Carriers, § 337. General custom governs in this matter.  Cotton is always shipped at the consignor's risk, and sold as his.  He pays the insurance, and if it is damaged or destroyed uninsured, the commission merchant never sustains the loss.  Decisions from States in which the course of business is different have no application in cases of this character, which must be governed by our own precedents.

CHALMERS, C. J., delivered the opinion of the court.

It is quite generally agreed that where the seller of goods delivers them to a common carrier to be transported to the purchaser, the goods are considered as delivered to the purchaser in the absence of exceptional circumstances showing a contrary intention.  Whether the same rule obtains where goods are forwarded through a common carrier by a principal to his factor for sale, and for the purpose of liquidating an existing indebtedness, is a question on which the authorities are divided.  It was held in the case of *Bonner* v. *Marsh*, 10 S. & M. 376, that even where a bill of lading had been made out in the name of the factor and forwarded to him, and the object was to pay off the debt of the consignor to the consignee, a delivery to the carrier was not a delivery to the consignee, and that the property was liable in the hands of the carrier to attachment by the creditors of the consignor ; and the doctrine was re-affirmed in the much later case of *Dickman* v. *Williams*, 50 Miss. 500.  In both cases the question received careful consideration, and, though it seems to have been held otherwise in other States, we will adhere to our decisions on the subject. It is after all, as all the authorities agree, very much a question of intention, and perhaps the actual intention of the parties is quite as often one way as the other.  In the case in hand it is admitted that there was no intention of transferring the title, or of parting with the control over the cotton shipped, except so far as the law will deduce it from the fact of shipment, and the making out and forwarding of the bill of lading.  It is to be observed that in neither of the cases cited, nor in the one at

bar, does it appear that the bill of lading had come to the hands of the consignee, though in all the cases it had been forwarded to him. *Affirmed.*