60   516
81   365

## J. W. FRENCH v. E. P. SALE.

1. ATTACHMENT. *Claimant's issue. Judgment against defendant, whether part of record, or evidence,*

In the trial of the issue between a plaintiff in attachment and the claimant of property levied upon, the judgment in favor of the plaintiff and against the defendant in attachment is a part of the record, and need not be offered in evidence by the plaintiff in making out his case.

2. SAME. *Claimant's issue. Hearsay evidence. Res gestœ. Case in judgment.*

When the plaintiff in an attachment seeks to disprove the claim of a claimant of the property levied on, by showing that defendant, prior to the issuance of the attachment, sold to the plaintiff's witnesses some property which was originally a part comprised with that in controversy, it is competent for the claimant after showing by his witnesses that, prior to the issuance of the attachment, they had bought a part of such original property from the defendant, to prove by them that the defendant said at the time of the sales to them, respectively, that the property belonged to the claimant, who left the same with him for sale. Such statements of the defendant were a part of the *res gestœ* and explanatory of the sales.

3. SAME. *Claimant's issue. Practice. Evidence. Contradiction of witness. Right to explain.*

In the trial of a claimant's issue in attachment, the plaintiff asked the defendant in the attachment, who was testifying on cross-examination, if he did not lend to the claimant five certain sums of money, severally named, at several different dates particulary specified; and the witness answered in the negative. The claimant having closed his evidence, the plaintiff in rebuttal offered in evidence five checks and the bank books containing the accounts of the defendant and claimant, respectively, in connection with the testimony of a witness having the books and checks in charge, to the effect that those checks were drawn by the defendant in favor of the claimant, and, when presented at the bank, were credited to the claimant's account and on the same day charged to that of the defendant. The checks corresponded in date and amount to the inquiries above stated. The claimant then offered to reintroduce the defendant to prove that the checks were not given for a loan to the claimant, and to explain the transaction in which they were given. The court upon the objection of the plaintiff refused to admit the proffered testimony. *Held*, that the matter inquired of being material, it was not just to contradict the witness, without having asked him about the checks *eo nomine*, and then to deny him the right to explain.

APPEAL from the Circuit Court of Monroe County.

Hon. J. A. GREEN, Judge.

On the 18th of April, 1881, E. P. Sale sued out an attachment against Spratt & French, a firm composed of H. D.

Spratt and A. H. French, for a debt of $2,200 due on the 14th of April, 1882. The writ was levied upon certain horses, mules, wagons, buggies, tents and other things, as the property of the defendants. J. W. French filed an affidavit claiming the property levied upon, and an issue to try the right to the property was joined between him and the plaintiff in attachment. The plaintiff, having recovered judgment against the defendants in attachment, went to trial upon the issue joined with the claimant. In the trial of this issue many witnesses were examined by both sides, but it is not deemed necessary to set out any of the testimony except such as is made the basis of assignments of error. The property in controversy and some other property had been used by a circus combination, and was known as the " circus property." The plaintiff adduced evidence tending to show that this property had been sold by J. W. French to A. H. French some time before the levy of the attachment. Several witnesses testified to having bought a part of the original " circus property " from A. H. French, and given their promissory notes, respectively, to him for the same.

The claimant then offered W. S. Mullins as a witness in his behalf, and Mullins testified that he had bought " some of the circus stock," from A. H. French, before the levy of the attachment, and had given, therefor, his promissory note, secured by a deed of trust. He was then asked what A. H. French said as to the ownership of the property at the time of the sale to the witness. The plaintiff's counsel objected to the question. The counsel for the claimant stated that the witness would testify that " A. H. French told him that the circus property belonged to J. W. French, who had left it with him to dispose of, and that he must require a deed of trust to secure the payment of the note." The objection was sustained and the witness was not permitted to answer the question. Thomas A. Smith, another witness for the claimant, testified to having bought some of the " circus property " from A. H. French, and was likewise asked what

French said as to the ownership of the property; but the plaintiff objected to the question, and the court refused to permit the witness to answer it.

A. H. French testified, in answer to questions propounded on cross-examination by counsel for the plaintiff, that he did not advance or lend any money to the claimant in the early part of 1876; that he did not advance or lend to the claimant $1,500, in March, 1876; $1,000 in April, 1876; $500 in May, 1876; $1,000 in July, 1876, nor $7,000 in October, 1876, and that the claimant never " got " from him $5,000 or $6,000 about that time.

After the claimant had closed his evidence the plaintiff introduced W. C. McMillan in rebuttal, who produced the books of the bank where A. H. French and J. W. French kept their accounts in 1876, and five checks drawn by the former in favor of the latter, the first dated March 29, 1876, for $1,500; the second dated April 8, 1876, for $1,000; the third dated May 5, 1876, for $500; the fourth dated July 24, 1876, for $1,000, and the fifth dated October 27, 1876, for $1,000. The plaintiff offered these checks in evidence, proposing to prove their genuineness by McMillan, and also that part of the bank books containing the accounts of the Frenches, respectively, in connection with the testimony of the witness to prove the same and to point out the fact that when the checks were entered on the books to the debit of A. H. French, they were on the same day put to the credit of J. W. French. The claimant objected to the admission of McMillan's testimony, and the checks and books of account, but the court overruled the objection. The plaintiff having concluded his evidence in rebuttal, the counsel for the claimant offered to introduce the claimant himself " to prove that the five checks offered in evidence were not a loan of money by A. H. French to him, and to explain what the transaction as evidenced by them was, counsel stating that the checks had not been shown to them or their clients." The plaintiff

objected, and the court refused to permit the claimant to testify as proposed.

The plaintiff did not introduce in evidence his judgment against the defendants in the attachment, and upon this point the claimant asked an instruction as follows :  " 8.  If the jury believe from the evidence that no judgment of E. P. Sale against Spratt & French has been read in testimony they will find for the claimant."  The court refused to grant this instruction.  The verdict and judgment were in favor of the plaintiff, and the claimant appealed.

The transcript sent to this court from the court below contained a part of the record of the attachment proceedings, but omitted the judgment against the defendants in attachment.  The appellee made a motion in this court for a *certiorari* to compel the clerk of the Circuit Court to send a complete record containing the judgment against the defendants in the attachment.  The appellant made a countermotion to strike from the transcript that portion containing parts of the record of the proceedings in attachment, which parts appear in the record without being embraced in the bill of exceptions or having been introduced in evidence.  By agreement of counsel on both sides, the case was submitted upon the two motions, and also for final adjudication, and the opinion of the court disposes of it fully.

*Houston & Reynolds*, for the appellant.

( *Brief on the motions.* )

On a trial of an issue as to the right of property levied upon by attachment, what constitutes the record?  Is the record in the attachment suit a part of the record in the suit against the claimant of the property?  The attachment suit and the claimant's issue are separate suits.  The first is a suit between the attaching creditor and the alleged debtor ; the latter is a suit between the creditor and the claimant, " as much so as where the claim to property is preferred by replevin."  *Atkinson* v. *Foxnuth*, 53 Miss. 747.  If separate suits, then the records must be separate, that is, the

record in the one is not a record in the other. In a proceeding against a garnishee, whether after attachment or judgment, the record of the original suit is no part of the garnishment proceedings. The proceedings against the garnishee are collateral to the main suit, as the suit between the attaching creditor and claimant is collateral to the suit of the creditor against the debtor; the judgment in the original suit is conclusive against the garnishee, as is the judgment between the attaching creditor and debtor conclusive against the claimant. No irregularities in the original judgment, that it was rendered without jurisdiction, unless the want of jurisdiction appears on the face of the proceedings, can be shown by the garnishee or claimant. *Sadler* v. *Mobile Life Insurance Company*, 53 Miss. 747. The question is not *res integra* in this State. In *Martin* v. *Harvey*, 54 Miss. 685, it is decided that the execution on the judgment in the original suit is no part of the record of the proceedings against the garnishee. In *Ross* v. *Gary*, 7 How. (Miss.) 217, it is held that the execution is no part of the record in the proceeding under the statute to try the right of property levied upon by execution. In *Dickman* v. *Williams*, 50 Miss. 500, and the cases cited, held, that the judgment must be proven on the trial of the claimant's issue. Do you prove on a trial that which is a part of the record in the case. In *Meacham* v. *Moore*, 59 Miss. 562, this court set aside the judgment of the lower court, because the court refused, after all the evidence was in, to permit the plaintiff to introduce evidence of the judgment in the attachment suit. If this judgment was part of the record, then it was already before the jury, the court took judicial notice of it. These cases certainly settle this question. What is a part of the record on the trial of the claimant's issue in an attachment suit? The affidavit of the claimant, the tender of issue by the creditor, and the acceptance of the issue and the orders and judgment of the court (and this was all that was read to the court in this case), constitute the record. *Gunn* v.

*Howell*, 27 Ala. 676, and authorities cited, and the authorities cited, *supra*. See also *Helm* v. *Gray*, 59 Miss. 54.

(*Brief on the assignment of errors.*)

The court erred, we contend, in excluding the statements of Mullins and Smith as to what A. H. French said concerning the property which he sold to them at the time of the sale. The declaration of a party in the possession of property and explanatory of his possession, constitute a part of the *res gestœ* and are admissible as evidence. *Thomas* v. *De Graffenreid*, 17 Ala. 607 ; *Webster* v. *Smith*, 10 Ala. 429 ; 17 Ala. 10, 216, 366, 813 ; 1 Whart. on Ev., sect. 262. In *Denling* v. *Bryant*, 17 Ala. 10, it is held that the declarations of one in possession of a boat are competent evidence to show that a third person is, with him, a joint owner thereof. In *Nelson* v. *Iverson*, 17 Ala. 216, it is decided that the declarations of a party in possession are admissible as a part of the *res gestœ* to prove the character of his possession, as that he claims the property as his own, or holds it in subordination to the claim of another. In *Walker* v. *Blassingame*, 17 Ala. 813, the court say : " We have repeatedly held that the declaration of one in possession, explanatory of his possession, as that he held in his own right, or as agent or tenant of another * * * are admissible as showing the extent or character of his possession." The principle we regard as well settled, and we cannot comprehend the grounds upon which the court excluded it.

The court erred in admitting the testimony of W. C. McMillan, in admitting as testimony the checks drawn by J. H. French, and the copies of account from the books of Adams, Spratt & Co., of A. H. French, and of J. W. French. This testimony was not in rebuttal. The court, after an examination of all the testimony which preceded the introduction of this, will see that it rebutted or explained nothing which had gone before. It was new matter, brought forward as rebuttal. After this testimony was admitted, counsel for J. W. French asked to introduce evidence to show what was the transaction

represented by the checks, and this was refused. If the testimony was not in rebuttal, it was error in the court to refuse the defendant an opportunity to meet it. It gave all the advantage to the plaintiff. The testimony was irrelevant. If the checks tended to establish a loan of money from A. H. French to J. W. French, or that the latter was operating upon the money of the former, it was in 1876, five years before the debt of Spratt & French to Sale originated. If the object of the testimony was to show fraud as to creditors, Sale's debt was not in existence, and he cannot complain. It was not shown that the money obtained from the checks, was used in the purchase of the property in controversy. The check of A. H. French in favor of J. W. French is not evidence of a loan of money, but rather of an indebtedness of the drawer to the payee. If correct in any of these positions, the testimony was irrevelant. It is no answer to our several positions, that the court erred in excluding and admitting testimony, that it was without injury to appellant. While we shall contend that the verdict is not supported by the testimony, is contrary to it, there was a conflict in the testimony, it was a doubtful case, and the rule is well settled that this court, under such circumstances, should reverse for the admission of illegal evidence and the rejection of that which was legal. *Barringer* v. *Nesbit*, 1 Smed. & M. 29, 30, cases cited.

*Murphy, Sykes & Bristow*, for the appellee.

(*Brief on the motions.*)

We submit the transcript in this cause is defective in not showing the judgment against Spratt & French, the original defendants, before the judgment against J. W. French, claimant. We submit that this question is *res integra*, never has been presented to or passed on by this court, or any other, so far as we can find. The cases cited by counsel of *Mandel* v. *McClure*, 14 Smed. & M. 11, and *Dickman* v. *Williams*, 50 Miss. 500, merely hold, what is now a part of our statute, that judgment must be rendered against the original defendant before the trial of the claimant's issue. Code 1880, sect. 2460.

But in both the above cited cases, the case of a claimant is directly likened to the case of a garnishee, as to the necessity of a precedent judgment against the original defendant before proceeding to try the garnishment issue.   And in the two cases of *Roberts* v. *Barry*, 42 Miss. 260, and *Metcalf* v. *Steele*, 42 Miss. 511, the judgment against the defendant and the judgment against the garnishee are distinctly recognized as parts of the same record.   And in *Maury* v. *Roberts*, 27 Miss. 227, cited by Justice Simrall with approval in *Dickman* v. *Williams*, *supra*, the cause was reversed because it did not appear in the record that the judgment had been rendered against the original defendant before the judgment by default.   In the case of *Meacham* v. *Moore*, 59 Miss. 562, this point was not raised, nor passed upon by the court.   What was decided by the court was, (1) that a judgment against the original defendants was necessary to maintain the issue between plaintiffs and claimant; and (2) that when plaintiffs offered to read their judgment before the jury, after announcing themselves through, they should have been allowed to do so.   It does not appear that the judgment was included in the transcript, or if omitted, that plaintiff sought to have it included therein.   The court decided on what was presented to them.   Let us then examine the reasons in favor of our position : —

1. The claim proceeding is not like an action of replevin, which was allowed before the Code of 1880.   The claimant becomes defendant in the attachment suit, the burden of proof being on the plaintiff.   The claim is thus not a collateral suit, but an issue in the attachment suit.   It is called the " claimant's issue."   The case of *Sherwood* v. *Houston*, 41 Miss. 61, in which the claim proceeding was held to be a collateral suit, independent of the attachment proceedings, was overruled on this very point by this court in *Dickman* v. *Williams*, *supra*. In the latter case, too, it is held that evidence *in pais* of indebtedness on trial of the claim issue will not be allowed. It must be established by a judgment in the cause.

2. What should the record proper contain?   The original

process, pleadings, orders of court, and judgments. If any of these are copied into the bill of exceptions, it will be at the expense of the party who has it done.   *Safford* v. *Vail*, 22 Ill. 327 ; *Holloway* v. *Benson*, 59 Miss. 358.

(*Brief on the assignment of errors.*)

What was said by A. H. French to W. S. Mullins and Thomas A. Smith, one, two or three months previous to Sale's levy, can certainly not be competent evidence in this case. These witnesses were not introduced by us, but by the claimant ; and this is nothing more than an attempt to show certain declarations of A. H. French, in favor of his own interest, by his own witnesses.   We are not depending on anything they might or might not state as to the possession of claimant, or A. H. French, or any one else ; and to permit these witnesses to testify as to what A. H. French said to them, would simply be permitting him to manufacture testimony for himself. The appellant complains of the admission in evidence of the five checks of A. H. French, payable to J. W. French, amounting in all to $5,000, and the entries of the bank books to debit of A. H. French and credit of claimant, of corresponding dates and amounts.   Counsel contend that this testimony was not in rebuttal, and was irrelevant.   We submit it was clearly in rebuttal.   A. H. French was asked if he ever advanced or loaned any money to the claimant about the time claimant went into the hardware business in the early part of 1876.   He positively denied it.   To call his attention more specifically to the matter he was asked if he ever advanced or loaned to claimant $1,500 in March, 1876 ; $1,000 in April, 1876 ; $500 in May, 1876 ; $1,000 in July, 1876, and $1,000 in October, 1876.   To cover every conceivable phase of transfer of money from one to the other, he was further asked if claimant got from him as much as $5,000 or $6,000 about that time.   To each of these questions he gave an unqualified denial.   With this testimony before him, the claimant was afterwards on the stand, and upon this important subject said nothing, when he had a legal opportunity to

explain how it was, in view of the facts immediately afterwards developed, which he must have known, of which he was charged with knowledge, that he had not " gotten " from A. H. French, by way of advance, loan or otherwise, any money at the time mentioned. To rebut A. H. French's testimony, to show the true facts, to show that claimant at the time named had got from A. H. French as much as $5,000, the checks and book entries were introduced. The object was not to impeach the witness, not to show " statements made out of court variant from the testimony of the witness in court," but to establish the fact as it really existed. It was clearly in rebuttal. Our position is sustained by this court in *Mixon v. The State*, 55 Miss. 527. But it is urged that claimant should have been allowed to testify in sur-rebuttal for the purpose of explaining the checks and the book entries. This was a matter within the discretion of the court.

*W. P. & J. B. Harris*, on the same side.

( *Brief on the motions.* )

In the case of a claim interposed in the proceeding by attachment, it is strictly an intervention to prevent, or to resist the subjecture of the property seized, as a basis of jurisdiction by original process in a proceeding to reach it for the satisfaction of the debt claimed in the suit. If we suppose the case of garnishee process against persons, as a summons of garnishees and also a levy on property claimed on oath by another party, with a contested answer in the garnishment branch of the case, we have in the suit parties brought in *in invitum*, and a party coming into the case voluntarily. The object of the plaintiff as to both is the same, it is to subject the debtor's property to the payment of a debt to be established in the suit, the property taking the place of the debtor so far as it is a proceeding *in rem.* The relations of the claimant, and those of the garnishee to the attachment proceeding and judgment are the same. If there was ever a difference, that difference has been removed by sect. 1059 of the Code, which gives to the judgment against the attachment-

debtor precisely the footing it has in the garnishment pro-
ceeding, an essential step, as a matter of procedure to enable
the court in which it is pending to try and to give judgment.
It is not in the case as evidence for one party or the other, but
is part and parcel of a proceeding to subject property, and
made in an indispensable part. The court must take judicial
cognizance of the course of procedure before it, because the
statute has laid an injunction on the court not to try the
claim until the plaintiff acquires the right to subject the prop-
erty. The claim is propounded on the service of the writ.
The issue is formed almost invariably before judgment against
the debtor. That may never be rendered, or not until a
subsequent term of the court. So that if it occupies the foot-
ing of a collateral fact to be proved, then we have the strange
anomaly of the creation of the evidence, which is to decide an
issue long after the issue has been formed. The plaintiff may
never obtain a judgment. If he be defeated, the court takes
judicial notice of the fact and in its judgment dismisses the
attachment. No proof is ever called for. If the court must
treat it as an essential part of the proceeding to subject property
for one purpose, why not for all purposes as well, when for as
against the attachment-debtor. This judgment is not only an
essential element of the procedure controlling its progress,
but it is in after proceedings the ultimate measure of the
rights of the plaintiff, and the liability of garnishees and
claimants. The debt may exceed the judgment in the one
case, the property be of greater value in the other, but the
judgment controls as absolutely as it does the liability of the
attachment-debtor.

(*Brief on the assignment of errors.*)

There were some rulings upon evidence which are com-
plained of. The claimant offered to prove by a witness that
A. H. French, while in the possession of the property claimed,
stated that he held as agent to sell for his brother, J. W.
French. On objection by the plaintiff, this evidence was
refused. No time was indicated with reference to the depart-

ure and return of J. W. French.  Whether the inquiry falls within the old rule as to statements by one in possession, in disparagement of title, is, we think, immaterial in this case. The statements and acts of A. H. French were brought out. He was on the stand as a witness, and so was J. W. French. And the actual state of the title was exposed or attempted to be, by the parties to it, and by Messrs. McAlister and Wicks. The truth is, the jury took what J. W. French, the claimant, had said as having greater weight.  A dozen unimpeached witnesses, or nearly that number, testified to the repeated and explicit statements made by J. W. French, that he had sold the property to his brother.  The plaintiff had a right to rebut the case made by the claimant, showing that he got no money from A. H. French at any time, by proving the fact that he had.  Whether the checks established it is another matter.  There is no rule which required the plaintiff to exhibit the checks to the witness.  They were deliberate pecuniary transactions of A. H. French in writing.  The point was not his contradiction (but even that would make no difference), the plaintiff was entitled to the fact.  The other point, made as to the refusal of the court to permit the claimant to be recalled to explain, we say that this seems to be a matter depending on the discretion of the court, and that discretion was not abused here.  This J. W. French had been on the stand and had full swing at explanations of all his transactions.  If he chose to pass by this one, it was his misfortune.  The whole matter was uninfluential, but remotely connected with the real controversy, as were the matter the checks were intended to rebut.

CAMPBELL, C. J., delivered the opinion of the court.

The first question to be decided in this case is, whether in the trial of the issue between the plaintiff in the attachment and the claimant of property levied on, the judgment in favor of the plaintiff against the defendant in the attachment is a part of the record in the trial of the right of property, and,

therefore, not to be read as evidence, or does it devolve on the plaintiff as a necessary part of his evidence to produce, and read to the jury such judgment. This precise question does not appear to have been decided by this court. The settled doctrine is that in the trial of such an issue on a claim to property seized under execution the plaintiff must produce and read as evidence the execution. Does a like rule apply in case of a claim to property seized under attachment?

In *Mandel* v. *McClure*, 14 Smed. & M. 11, which was an attachment and claim to property seized, the argument of the opinion is directed to the necessity of a judgment against the defendant in attachment, which is held to be a condition precedent to the right of the plaintiff to contest with the claimant. In that case a judgment had not been rendered, and this was fatal to the judgment against the claimant. The court looked through the record of the attachment suit to discover the fact that the required judgment had not been given.

The case of *Maury* v. *Roberts*, 27 Miss. 225, was an attachment, and the same view which prevailed in *Mandel* v. *McClure*, above, was announced without reference to that case, and the court discovered the non-existence of a judgment by examining the record of the attachment proceeding.

*Melins* v. *Houston*, 41 Miss. 59, was an attachment, and the record showed that judgment had not been given, and it was held unnecessary in a spirited opinion which took no notice of the two former cases holding a contrary view.

In *Dickman* v. *Williams*, 50 Miss. 500, the doctrine of the last mentioned case was overthrown, and that of the former cases declared to be the true one. In this case no judgment had been given, as was shown by the record of the attachment inspected by the court.

In *Helm* v. *Gray*, 59 Miss. 54, it was argued by counsel for the appellee that it was necessary for the record to show that plaintiff in the issue for the trial of the right of property offered in evidence the judgment in his favor against the

defendant in the attachment; and the opposite counsel, without gainsaying this view, based a claim to succeed on another ground, and the court, without stopping to consider this view, sustained the right of the appellant on another ground.

In *Meacham* v. *Moore*, 59 Miss. 561, the attachment was before a justice of the peace, and the claim of property was tried before him and found against the plaintiff, who appealed, and the transcript of the justice's record filed in the Circuit Court did not show that a judgment had been given in the attachment, and it was not controverted that it was necessary to show that judgment had been given in the attachment, and no question was made in this court other than as to the action of the Circuit Court in refusing to permit the plaintiff to show the judgment under the circumstances detailed in the report of the case.

Therefore, while it has been several times held that there must be a judgment in the attachment suit before trial of the issue on the claim of property, and while some of the language used in the cases is calculated to countenance the proposition that the judgment must be given in evidence on trial of this issue, and this view seems to have passed unchallenged by counsel or court in some instances, it is true that the question has not been decided by this court, aad is for the first time distinctly and specially presented for decision.

The claimant of property seized under execution intervenes, not in a pending suit, but in one ended and past. The claimant under an attachment interposes in a pending suit, must await its termination as between the parties, before his claim can be adjudicated, is bound to watch its progress, and at its ending in favor of the plaintiff, must be ready promptly to accept the issue tendered by him, and contest his right to subject to his judgment the subject of his claim. The claim throws an obstacle in the way of a plaintiff, who must first obtain a judgment of condemnation of the property claimed as against the defendant, and then encounter the claim of the claimant, who has asserted his right and denied that of the

60 Miss.—34

plaintiff.   The levy of the attachment, the claim of a third person, the judgment of condemnation of the property against the defendant, and the issue made upon the claim are successive steps to the goal sought to be reached by the plaintiff in his suit.   They are parts of one proceeding, which from the affidavit for the attachment to the judgment in the claimant's issue, is a continuous one, a chain of several links unbroken in its connection.

There must be a judgment in the attachment.   That is a prerequisite to the right of the plaintiff to contest with the claimant, who may remain passive until the plaintiff thus becomes eligible to contest his claim.   An objection by the claimant to the issue tendered as premature because no judgment had been given in the attachment would bring to the notice of the court the record of the proceedings in the attachment.   A motion by the claimant in arrest of judgment would cause an inspection of the record of the attachment suit   If an inspection of the record showed that the attachment was void the court would so pronounce it.   The claimant would not have to offer the record in evidence.   His motion would present the question just as that of a garnishee in such a case does.   He must see that a valid judgment exists.   So a claimant who may decline a contest with one not eligible for it, may dispute the right of the plaintiff to have a trial of an issue with him, and may appeal to the record of the plaintiff's cause in support of his attitude.   In the cases cited above, the court looked through the record of the attachment proceeding, and finding that judgment had not been rendered in the attachment, pronounced the trial of the claimant's issue premature.   In several of those cases the position of the claimant was likened to that of a garnishee, and it is certain that the entire record of the attachment proceeding goes with the garnishment proceeding.   It has ever been so in our practice, and Drake on Attachment says, sect. 658 a, " if the garnishee is summoned under an attachment, the true view seems to be that the garnishment, though in some sense a distinct

suit, belongs to, and is a part of, the record in the attach-
ment suit." This is the correct view, and applies to a claim
to property levied under an attachment.

Therefore, we deny the motion to strike from the record
filed here, such parts of the attachment proceeding as it con-
tains; and grant the motion for *certiorari* to bring up the
judgment in the attachment, and carrying out the understand-
ing had upon the submission of these motions, and having the
case before us on its merits we now address ourselves to it.

The court erred in excluding from the jury the statements
made by A. H. French at the time of his selling part of the
" circus property," to the effect that it belonged to the appel-
lant, and had been left by appellant with him for sale.    It
was sought to disprove the claim of the appellant to the
property by showing that A. H. French, his brother, dis-
posed of some of it, and it was competent to show the
declarations of A. H. French attending the acts of apparent
ownership exercised by him and produced in evidence as
indicative of his ownership.    They were strictly part of the
*res gestæ* and admissible as explanatory of the thing done.

The court erred in admitting the testimony of McMillan
and the five checks, and denying the opportunity to the
appellant to explain the transactions in which they were
drawn.    It was not just to the parties concerned to contra-
dict the witnesses in this material matter without asking
about the checks *eo nomine*, and then to deny the offered
explanation.    The attention of the witness should have been
called to the checks, and he should have been asked about
them, or after they were produced before the jury an oppor-
tunity to explain them should have been given, and its denial
was erroneous.

Judgment reversed and cause remanded for a new trial.