BANK *v.* HILL, FONTAINE & CO.

(*Jackson.* April 28, 1897.)

1. MORTGAGES AND DEEDS OF TRUST. *Registered foreign chattel mortgages enforceable in this State.*

   The mortgagee in a foreign chattel mortgage duly registered under laws similar to our own in the State where made and property situated, can enforce his rights in the courts of this State without any registration of his mortgage here, against one who subsequently purchases the mortgaged property upon its introduction into this State with such information as to the mortgagor's rights as should put him upon inquiry. (*Post, pp. 43–47.*)

   Cases cited and approved: Lally *v.* Holland, 1 Swan, 401; 12 Cush., 108; 25 Miss., 471; 76 Ind., 512; 62 Mo., 524; 90 Va., 500; 50 Ill., 370; 31 Ark., 32; 24 Iowa, 322; 37 Vt., 337; 7 Ohio St., 134; 14 Ala., 55.

   Cited and distinguished: Roach *v.* Turk, 9 Heis., 708; 73 Miss., 434; 10 Smed. & M., 376; 50 Miss., 500; 59 Miss., 182.

2. SAME. *What constitutes notice of mortgagee's right to subsequent purchaser.*

   Information given by a mortgagor of a cotton crop, to one who subsequently purchases part of the cotton, of the existence of a mortgage on the crop is sufficient to put him on inquiry as to the mortgagee's rights, although such information is coupled with a statement that the cotton which would be shipped to him will be from a part of the crop not covered by the mortgage. (*Post, pp. 47, 48.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. JOHN L. T. SNEED, Ch.

EDGINGTON & EDGINGTON for Bank.

W. D. WILKINSON for Hill, Fontaine & Co.

BEARD, J.   This is a controversy over the proceeds of seventy-seven bales of cotton, shipped by one Blakemore from his plantation in Arkansas to the defendants, Hill, Fontaine & Co., cotton factors in Memphis, in this State, to be sold on his account.   This cotton, at the time of its shipment, was covered by a trust deed, made by the consignor for the purpose of securing the complainant in the payment of a debt, the larger part of which remains unpaid.   This instrument was duly authenticated, and was placed of record in the proper public office in the county in that State where this property was then situated.   Prior to this shipment, the defendants, as merchants and factors, had made considerable advancements of money and supplies to Blakemore, upon the faith of an agreement on his part to send them cotton for their reimbursement, and this assignment was made in fulfillment of that undertaking.   The cotton was sold by defendants in open market, and its proceeds were applied by them to the credit of the consignor on this antecedent account for advancements.   Neither at the time of the receipt of the cotton nor of the appropriation of the purchase money derived from its sale, did the defendants have any actual notice that it was incumbered by complainant's trust deed.

Upon these facts the Chancellor held that the defendants had the superior equity, and he therefore

entered a decree dismissing the bill: and the question presented to us is, is this decree maintainable?

The laws of Arkansas, so far as they affect the authentication and registration of chattel mortgages or trusts of personalty, were put in evidence in the Court below, and now constitute a part of the record in the cause. Upon examination we find them, in every material respect, similar to the statute of this State bearing on the same subject. By the laws of both States a *bona fide* claimant under such an instrument, properly registered, is protected, whenever the property conveyed was within the limits of the State when such registration took place, and, as long as the Courts of that State can exercise jurisdiction over it. It is as much the policy of each State to make secure the rights of the mortgagee, as of the vendee of personalty. In view, then, of this settled policy as to domestic mortgages, and in the absence of a statute requiring the registration here of a foreign mortgage of personalty, in order to protect the title of the foreign mortgagee, when the property is subsequently brought into this State, we can see no sound reason why our Courts shall decline to give the complainant the relief it seeks in this cause. For, whatever may be the ground upon which it rests, whether of comity or that of international common law, yet the rule, recognized by text writers and the Courts with great uniformity, is, that the *lex rei sitæ* determines the transfer of movable property, and a sale or chattel mortgage of such prop-

erty, good according to that law, will be regarded and enforced by the Courts of a foreign State where the property is subsequently brought, unless it be contrary to some settled public policy, declared by statute or otherwise. Wh. on Con. L., Sec. 317; Jones Ch. Mort., Sec. 299; 3 E. & A. & E. E. L. (old edition, 190). The rights of such a vendee or mortgagee will be protected against purchasers as well as attaching and execution creditors. *Longworthy* v. *Little,* 12 Cush., 108; *Barker* v. *Stacey,* 25 Miss., 471; *Ames Iron Works* v. *Warner,* 76 Ind., 512; *Feust* v. *Rowell,* 62 Mo., 524; *Craig* v. *Williams,* 90 Va., 500; *Munford* v. *Canty,* 50 Ill., 370; *Hall* v. *Pillow,* 31 Ark., 32; *Smith* v. *McLean,* 24 Iowa, 322; *Cobb* v. *Buswell,* 37 Vt., 337; *Kanaga* v. *Taylor,* 7 Ohio St. Rep., 134 (S. C., 70 A. D., 62, and notes); *Lally* v. *Holland,* 1 Swan, 401.

Beale v. Williamson, 14 Ala., 55, involved a controversy over the title to a negro slave, between a mortgagee, claiming under a mortgage executed in and properly authenticated and recorded, as required by the laws of Georgia, where the slave then was, and a purchaser without notice from the mortgagor, after removal of the property to Alabama. The Court held, in that case, that the validity of the mortgage was to be determined by the law of Georgia, and that an Act passed by the Legislature of Alabama, requiring a chattel mortgage, executed in another State, on the removal of the property to Alabama, to be recorded there within twelve months,

and, in the event of failure to do so, made the property liable to the debts of the mortgagor, afforded no protection to the party invoking it, because the Act was silent as to a "purchaser," who was "therefore not within the influence of the statute."

In *Hall* v. *Pillow, supra,* the title of the foreign mortgagee of a chattel subsequently removed into Arkansas by the mortgagor, as against the purchaser from the latter, after its removal, was maintained, though in doing so the Court, in the absence of proof, had to indulge the presumption that the law of the State where the instrument was made and the property was then situated, gave to the acknowledgment and recording of deeds the same effect as was given by the laws of Arkansas.

Without further citation of cases, we submit that an examination of the text-books, and of the decided cases, will disclose the great unanimity with which the rule has been recognized and applied, that "a party who obtains a good title to movable property, absolute or qualified, by the laws of" another State, where it is then located, will be entitled "to maintain and enforce" it (12 Cush., 108) in the foreign forum against both creditors and purchasers acquiring rights subsequent to its removal, subject alone to the qualification or limitation that there is no statute or settled public policy contrary thereto.

But it is insisted for the defendants that a dif-

ferent rule has been announced by this Court in
*Roach* v. *Turk*, 9 Heis., 708, and that case is in-
voked as authority for the Chancellor's decree in
this. That, however, is easily distinguished from
the present case. It was an action for conversion,
brought by the true owner of certain cotton shipped
from Mississippi by one who, having lawfully ob-
tained possession, afterwards fraudulently shipped it
in his own name to a factor in Memphis, to be
sold on the consignor's account. It was subse-
quently sold, and the proceeds of the sale were paid
by the factor to the fraudulent consignor, "without
knowledge of the title of the plaintiff, . . . and
without the means of knowledge," say this Court.
Under the circumstances developed in that case, it
was held that the mere act of selling goods ob-
tained from an unauthorized agent, with no knowl-
edge of the principal's title, will not render a factor
liable, but that to fix liability upon him, a de-
mand must be made by the owner while the goods,
or their proceeds, are in his hands, or notice of the
owner's title must be brought home to him.

The facts of the present case remove it altogether
from the influence of the principle announced in that.
Here the defendants had, when the bill in this cause
was filed, and still have, the proceeds of this cotton.
It is true that they have applied them to the credit
of Blakemore's account, but that was an antecedent
debt, created prior to the receipt and sale of the cotton.

But there is another fact which serves to distin-

guish this case from *Roach* v. *Tuck.* In that case
the factor was in entire ignorance of the true
owner's title, and of any fact which would have put
him on inquiry. In this, however, the mortgagor
had informed Mr. Fontaine, of defendant's firm, of
the existence of a mortgage on his cotton crop in
Arkansas in favor of complainants. It is true this
information was coupled with a statement that the
cotton which would be shipped to the defendants
to cover their advancements, would be from a part
of his crop not covered by this mortgage, and the
defendants received and applied this cotton in the
utmost good faith, believing that Blakemore had the
full right to appropriate it as he did. But we think
this information, so received by them, was sufficient,
at least, to put them on inquiry, and failing to in-
vestigate, when investigation would have led them
to a knowledge of the fact that complainants' trust
deed included the property in controversy, they are
left without any equity to meet complainants' de-
mand. *Kanaga* v. *Taylor, supra.*

The defendants have called to our attention, and
rely for authority on, *Hernandez* v. *Aaron,* 73 Miss-,
434. This case involved a controversy between a
mortgagee claiming under a chattel mortgage re-
corded in Mississippi, where the property then was,
held by a merchant in New Orleans, to whom the
cotton was consigned, and by whom it was sold.

We have carefully examined that case, and we
find the question which we hold as determinative of

the present case is neither considered nor decided in that. The opinion of the Court is very brief, and its conclusions are rested upon *Brown* v. *Marsh*, 10 Smed. & M., 376; *Hickman* v. *Williams*, 50 Miss., 500; and *Chaffe* v. *Railroad*, 59 Miss., 182.

Those cases involved alone the question of the right of a creditor of a consignor to intercept, *in transitu*, by legal process, property which the latter nad, before that, delivered to a common carrier for a consignee, at the same time taking from the carrier a bill of lading to the order of the consignee. Neither the principal case, nor those cited as authority for it, can be regarded as giving any aid to the present contention of defendants. We are satisfied that the Chancellor's decree in this cause was erroneous, and it is therefore reversed.